**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DONALD W. GOODRICH,

         Plaintiff,

vs.

JANA HACKER,

         Defendant.

No. C15-3114-LTS

**ORDER**

_____

## I.  INTRODUCTION

The matter before the court is the defendant's motion for summary judgment (Doc. No. 21).  Proceeding pro se, the plaintiff filed a resistance (Doc. No. 23).  The defendant did not file a reply.  Neither party requested oral argument, and, in any event, oral argument is not necessary.  The motion is fully submitted.

## II.  PROCEDURAL HISTORY

The plaintiff commenced this lawsuit on May 4, 2015.  In his complaint (Doc. No. 1), the plaintiff generally asserts that the defendant: (1) refused to send him to a specialist for his plantar fasciitis; (2) refused to provide him with proper medical footwear; and (3) refused to provide him with medication.  With respect to relief, the plaintiff states that he wants: (1) injections to be reinstated and provided in the proper manner; (2) pain medication to be reinstated and provided in the proper manner; (3) a specialist to see him every six months unless the specialist orders otherwise; and (4) medical footwear as needed.  In an order dated August 27, 2015, the court noted:

Before proceeding with his action, the plaintiff should consider that merely disagreeing with the medical treatment that is provided does not typically give rise to a valid cause of action. *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (dismissing case as frivolous because "[n]either differences of opinion nor medical malpractice state an actionable Constitutional violation"); *see also Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("[T]he law requires that [the] plaintiff make a showing of subjective awareness by the prison officials of a "substantial risk" of "serious harm" . . . in order to establish [a viable] cause of action.").

Doc. No. 9. Additionally, in an order dated February 17, 2016, the court denied the plaintiff's request for appointment of counsel but, before doing so, observed:

It is a very close call as to whether the plaintiff's claim against the defendant survives initial scrutiny under 28 U.S.C. § 1915(e)(2) because: (1) it is unclear whether the plaintiff actually suffers from a serious medical condition and (2) it appears that the plaintiff's plantar fasciitis has been treated and he is merely dissatisfied that more is not being done to help him, that is, he desires to be sent to a specialist every six months, to be provided proper fitting medical footwear and to receive different medication and/or medication in a different dosage.[1] *Cf. Reif v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015) (emphasizing that medical professionals remain free to exercise independent medical judgment and inmates do not have a constitutional right to their requested course of treatment); *Triplett v. Palmer*, 592 F. App'x 534, 535 (8th Cir. 2015) (finding that facts failed to show that defendants had actual and subjective knowledge of serious medical condition and chose to ignore it); *Hartsfield v. Colburn*, 491 F.3d 394, 396-98 (8th Cir. 2007) (concluding that defendants responded appropriately to complaints of pain and discomfort, which included first trying ibuprofen); *Smith v. Corr. Med. Servs.*, 207 F. App'x 737, 739 (8th Cir. 2006) (determining

---

[1] The plaintiff acknowledges that he had access to pain medication, and, consequently, it appears that he might have been able to avoid all pain if he had taken more ibuprofen.

that treatment provided comported with constitutional requirements); *Rowe v. Norris*, 198 F. App'x 579, 580-81 (8th Cir. 2006) (concluding that no constitutional violation occurred because plaintiff only established disagreement with the treatment that he received); *Still v. Crawford*, 155 F. App'x 241, 242 (8th Cir. 2005) (finding that doctor appropriately responded to plaintiff's complaints); *Brewer v. Graves*, 152 F. App'x 548, 549 (8th Cir. 2005) (holding that record did not establish that medical care was so inappropriate as to evidence intentional maltreatment); *Bender v. Regier*, 385 F.3d 1133, 1337 (8th Cir. 2004) (reiterating that neither negligent diagnosis nor negligent treatment of medical condition are sufficient to establish liability under the Constitution); *Vonoczky v. Hedrick*, 44 F. App'x 41, 42 (8th Cir. 2002) (finding that record established treatment of, not deliberate indifference to, plaintiff's medical conditions); *Prater v. Dep't of Corr.*, 11 F. App'x 668, 669 (8th Cir. 2001) (holding that plaintiff failed to establish deliberate indifference because he did not allege that the medical staff defendants denied, delayed or refused him treatment and only alleged that they did not order x-rays, provide him boots rather than insoles or refer him to a foot specialist); *Jolly v. Knudsen*, 205 F.3d 1094, 1096-97 (8th Cir. 2000) (finding efforts to treat condition did not constitute deliberate indifference); *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (asserting that an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) (concluding that doctors' efforts to alleviate pain, while perhaps not as extensive as those a private-healthcare provider might have taken, did not reflect deliberate indifference to plaintiff's medical needs); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) (observing that prisoners do not have a constitutional right to any particular type of treatment); *Camberos v. Branstad*, 73 F.3d 174, 177 (8th Cir. 1995) (concluding that thorough care did not support a finding of deliberate indifference); *Beyerbach v. Sears*, 49 F.3d 1324, 1326-27 (8th Cir. 1995) (determining that medical treatment claim failed because plaintiff did not suffer any detrimental effects); *Fletcher v. Butts*, 994 F.2d 548, 549 (8th Cir. 1993) (holding that conservative treatment did not

establish deliberate indifference); *Smith v. Marcantonio*, 910
F.2d 500, 502 (8th Cir. 1990) (concluding that no Eighth
Amendment violation occurred where inmate sought more
medication).

Doc. No. 10. After the defendants filed an answer (Doc. No. 12), the court entered a
scheduling order (Doc. No. 13) and denied the plaintiff's additional requests for
appointment of counsel (Doc. No. 16). On April 13, 2016, the plaintiff sought to
supplement his complaint (Doc. No. 17), which the court permitted (Doc. No. 18). The
plaintiff's supplement (Doc. No. 19) reiterates and expands upon the points that he makes
in his complaint: (1) the defendant refused to send him to a specialist for his plantar
fasciitis and (2) although the defendant sent him to Dr. Kosinski at the Iowa Medical and
Classification Center, she refused to provide proper medical footwear or muscle relaxers
even after Dr. Kosinski recommended the use of medical footwear and muscle relaxers.
Ultimately, the defendant filed her motion for summary judgment, which the plaintiff
resists.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); *accord Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th
Cir. 2011) (en banc). "A dispute is genuine if the evidence is such that it could cause a
reasonable jury to return a verdict for either party; a fact is material if its resolution affects
the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir.
2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

"The movant 'bears the initial responsibility of informing the district court of the
basis for [his or her] motion,' and must identify 'those portions of [the record] . . . which
[he or she] believes demonstrate the absence of a genuine issue of material fact.'"
*Torgerson*, 643 F.3d at 1042 (second and third alterations in original) (quoting *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also* Fed. R. Civ. P. 56(c)(1)(A) (emphasizing that a motion must be supported by "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324).

When doing so, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "To survive a motion for summary judgment, the [nonmovant] must substantiate his [or her] allegations with sufficient probative evidence [that] would permit a finding in [his or her] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (third alteration in original) (internal quotation marks omitted) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). The nonmovant cannot simply rely on unsupported "self-serving allegations and denials . . . to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010); *accord Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). The nonmovant must substantiate factual allegations with independent documentary evidence. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013). Hence, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Throughout the summary judgment stage, the court must view genuinely disputed "evidence in the light most favorable to the nonmoving party and giv[e] the nonmoving party the benefit of all reasonable inferences." *Crawford v. Van Buren Cty., Ark.*, 678

F.3d 666, 669 (8th Cir. 2012) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1035 (8th Cir. 2010)); *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (stating that a court views the facts in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts); *Murchison v. Rogers*, 779 F.3d 882, 886-87 (8th Cir. 2015) (viewing evidence in light most favorable to nonmoving party and giving nonmoving party the benefit of all reasonable inferences). Moreover, "the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012) (citing *Anderson*, 477 U.S. at 249). No genuine issue for trial exists only if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci*, 557 U.S. at 586 (quoting *Matsushita*, 475 U.S. at 587); *accord Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009).

## IV. RELEVANT FACTUAL BACKGROUND

The plaintiff is an inmate at the Fort Dodge Correctional Facility (FDCF). *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 1); Defendant's App'x (Doc. No. 21-3 at 32); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). The defendant is employed as a nurse practitioner at FDCF. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 2); Defendant's App'x (Doc. No. 21-3 at 32); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

The defendant has access to inmate medical records, which are completed by medical staff as part of their duties and typically at or near the time of the fact or the event that is recorded, and she has access to and is familiar with documentation for inmates who receive treatment outside the Iowa Department of Corrections. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 4); Defendant's App'x (Doc. No. 21-3

at 32); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). The defendant is familiar with the plaintiff and his medical records. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶¶ 3 & 5); Defendant's App'x (Doc. No. 21-3 at 32-33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

The plaintiff experiences plantar fasciitis, which is a common cause of heel pain. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 6); Defendant's App'x (Doc. No. 21-3 at 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). Plantar fasciitis involves inflammation of a thick band of tissue that runs across the bottom of the foot and connects the heel bone to the toes. *Id*. It commonly causes individuals to experience pain during their first morning steps, and generally resolves once the foot limbers up. *Id*. Plantar fasciitis is best treated with anti-inflammatories, arch support and stretching exercises. *Id*.

In February of 2014, the plaintiff complained of foot pain and informed the defendant that he previously had injections in his left foot and right foot. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 7); Defendant's App'x (Doc. No. 21-3 at 3-4, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). The defendant did not note any deformity or swelling when she examined the plaintiff's feet, advised the plaintiff to purchase new insoles from the commissary, ordered ibuprofen for the plaintiff and indicated that it could be purchased from the commissary in the future. *Id*. On April 21, 2014, the defendant reordered ibuprofen for the plaintiff because the plaintiff complained of foot pain. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 8); Defendant's App'x (Doc. No. 21-3 at 5-6, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

On June 11, 2014, the defendant and other medical staff responded to the plaintiff's request for injections in his feet by referring him to the Iowa Medical and Classification Center. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 9);

Defendant's App'x (Doc. No. 21-3 at 7-9, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). On June 18, 2014, Dr. Joel Kosinski gave the plaintiff a steroid injection in his right foot, ordered the plaintiff to perform range of motion exercises with his right foot and ankle and indicated that the plaintiff could be seen in the future for his left foot if the procedure worked. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 10); Defendant's App'x (Doc. No. 21-3 at 10-11, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). Pursuant to a June 23, 2014, request to have his left foot injected with a steroid, the defendant and other medical staff set up an appointment to see Dr. Kosinski. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 11); Defendant's App'x (Doc. No. 21-3 at 12-13, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). On June 30, 2014, the plaintiff returned to the Iowa Medical and Classification Center and received a steroid injection in his left foot. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 12); Defendant's App'x (Doc. No. 21-3 at 14-15, 33); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

On July 3, 2014, the plaintiff purchased gel inserts. *See* Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1-2); Plaintiff's Exhibit (Doc. No. 23-3 at 1, 4). On October 27, 2014, the plaintiff complained of foot pain, and, in response, the defendant ordered ibuprofen for the plaintiff and ordered that an appointment with Dr. Kosinski be scheduled. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶¶ 13 & 14); Defendant's App'x (Doc. No. 21-3 at 16-17, 33-34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1). On November 14, 2014, the plaintiff purchased a pair of Nike shoes and gel inserts. *See* Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1-2); Plaintiff's Exhibit (Doc. No. 23-3 at 1, 5). Pursuant to the defendant's referral, Dr. Kosinski gave the plaintiff a steroid injection in his left foot on November 19, 2014. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 15); Defendant's App'x (Doc.

No. 21-3 at 18-19, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

On January 14, 2015, Dr. Kosinski noted that the plaintiff evidently had relief in his left foot after it had been injected in November of 2014, and he gave the plaintiff a steroid injection in his right foot. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 16); Defendant's App'x (Doc. No. 21-3 at 20-21, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). At the same appointment, Dr. Kosinski instructed the plaintiff to obtain New Balance shoes through the commissary because he had them in the past and they made his feet more comfortable, advised the plaintiff to perform plantar flexion and extension exercises, told him that there would be no need for him to return to the Iowa Medical and Classification Center before three months and stated that there was no indication for any further injections for six months to a year. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 17); Defendant's App'x (Doc. No. 21-3 at 20-21, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

On January 26, 2015, the defendant saw the plaintiff pursuant to a scheduled follow-up regarding his foot pain. The plaintiff thought the Iowa Department of Corrections was going to give him new shoes but the defendant explained that Dr. Kosinski recommended that the plaintiff buy shoes through the commissary. The defendant explained that the plaintiff had sufficient funds to do so. The defendant also reordered ibuprofen for the plaintiff and indicated that it could be purchased from the commissary in the future. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 18); Defendant's App'x (Doc. No. 21-3 at 22-23, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

On April 10, 2015, the plaintiff walked into the nurses' office with a normal gait, complained of foot pain and back pain and stated that he wanted more injections in his feet

and, if he could not get those injections, then he wanted injections in his back. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 19); Defendant's App'x (Doc. No. 21-3 at 24-25, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1). The defendant reviewed what occurred during his last visit with Dr. Kosinski. *Id*.

On May 8, 2015, the plaintiff purchased New Balance shoes. *See* Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1-2); Plaintiff's Exhibit (Doc. No. 23-3 at 1, 3). On July 27, 2015, the plaintiff requested more injections. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 20); Defendant's App'x (Doc. No. 21-3 at 26, 34); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1-2). In response, the defendant reviewed the plaintiff's chart, noted that the plaintiff had not purchased shoes, insoles or analgesics and scheduled a follow-up appointment. *Id*. On July 30, 2015, the plaintiff walked into the nurses' office with a normal gait and the defendant saw the plaintiff. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 21); Defendant's App'x (Doc. No. 21-3 at 27-28, 34-35); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 2). During the follow-up appointment, the defendant gave the plaintiff stretching exercises, scheduled a follow-up appointment in six weeks and directed the plaintiff to purchase analgesics as needed. *Id*.

In October of 2015, the plaintiff saw a nurse and, after seeing her, asked whether an appointment for the injections in his feet had been scheduled. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 22); Defendant's App'x (Doc. No. 21-3 at 29, 35); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 1-2). The defendant reviewed the plaintiff's chart and noted that the plaintiff had not purchased shoes, insoles or analgesics for his pain. *Id*.

In December of 2015, the plaintiff requested an injection in his foot and the defendant ordered that an appointment with Dr. Kosinski be scheduled. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 23); Defendant's App'x (Doc. No. 21-3 at 30, 35); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1). On December 16, 2015, Dr. Kosinski gave the plaintiff a steroid injection in both of his feet. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶ 24); Defendant's App'x (Doc. No. 21-3 at 31, 35); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1).

The defendant saw the plaintiff every three months because he continued to complain of foot pain and the plaintiff saw Dr. Kosinski, who provided injections as needed. *See* Defendant's Statement of Undisputed Material Facts (Doc. No. 21-1 at ¶¶ 25 & 26); Defendant's App'x (Doc. No. 21-3 at 35); Plaintiff's Statement of Undisputed Material Facts (Doc. No. 23-1); Plaintiff's Statement of Disputed Facts (Doc. No. 23-2 at 2).

## V. ANALYSIS

The plaintiff contends that the defendant's actions amounted to a civil rights violation under 42 U.S.C. § 1983. Specifically, the plaintiff alleges a violation of his right to be free from deliberate indifference to his serious medical needs.

### A. Civil Rights Claims under 42 U.S.C. § 1983

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding
for redress . . . .

42 U.S.C. § 1983. The statute provides "a broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, it provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (noting that the phrase "Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statutes, as well as those created by the Constitution). Thus, "[t]o state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution [or] laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011) ("To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right.").

In response to a claim under Section 1983, a defendant may assert the defense of qualified immunity. The Eighth Circuit has explained that:

Claims against government actors in their individual capacities
differ from those in their official capacities as to the type of

12

> conduct that is actionable and as to the type of defense that is available.  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citations omitted).  "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'"  *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818).  "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'"  *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted).  When analyzing qualified immunity, the Eighth Circuit has instructed district courts to conduct a two-part inquiry, that is, ask:

> (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct.

*Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014) (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013)).

### B. Merits of Plaintiff's Claim[2]

#### 1. Nature of Claim

The plaintiff has never asserted that he is suing the defendant in her individual capacity. Consequently, he is suing the defendant only in her official capacity. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (noting that it is assumed that a plaintiff is suing a defendant only in his or her official capacity if a plaintiff does not expressly and unambiguously state that a defendant is being sued in his or her individual capacity). The plaintiff, however, does not establish that any conduct occurred pursuant to an unconstitutional policy or as a result of a failure to properly supervise or train an employee. Hence, the plaintiff's action is subject to dismissal. *See id.* at 766-67 (determining that plaintiff failed to set forth sufficient facts to show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation); *see also Davis v. White*, 794 F.3d 1008, 1011 (8th Cir. 2015) (same); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986-87 (8th Cir. 2006) (same).

#### 2. Deliberate Indifference to Medical Needs Claim

An inadequate medical care claim is governed by the Eighth Amendment deliberate-indifference standard. *See Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

> Whether an official was deliberately indifferent requires both an objective and a subjective analysis. *Scott v. Benson*, 742 F.3d 335, 339-40 (8th Cir. 2014). Under the objective prong, [the plaintiff] must establish that he suffered from an

---

[2] The court notes that the plaintiff is proceeding under 28 U.S.C. § 1915, which requires the court to dismiss a case at any time if it determines that a plaintiff's action fails to state a claim upon which relief can be granted.

objectively serious medical need. *See id.* at 340. To be objectively serious, a medical need must have been "diagnosed by a physician as requiring treatment" or must be "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Under the subjective prong, [the plaintiff] must show that an official "actually knew of but deliberately disregarded his serious medical need." *Id.* This showing requires a mental state "akin to criminal recklessness." Id. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Consequently, [the plaintiff] must show "more than negligence, more even than gross negligence" to evince deliberate indifference. [*Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)] (quoting [*Jolly*, 205 F.3d at 1096]).

*Id.* at 1065; *accord Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006).

As a preliminary matter, the court notes that the plaintiff's complaint is unverified and he offers no sworn statements to generate a genuine issue of material fact that would defeat the defendant's motion for summary judgment. *See Risdal v. Nixon*, 589 F. App'x 801, 803 (8th Cir. 2014) (holding that the district court erred by considering a pro se plaintiff's unsworn statements, made at a telephone hearing, in denying the defendants' motion for summary judgment); *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (stating that, to defeat summary judgment, the plaintiff "was required to offer evidence countering defendants' supporting affidavits and other evidence"); *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (affirming grant of summary judgment where the plaintiff relied on his pleadings and did not submit an affidavit or any evidence from which a reasonable jury could conclude that he had shown one of the elements of his claims); *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (observing that summary judgment documents must be authenticated by and attached to affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or deposition and that documents not meeting such requirements cannot be

considered); *Metzsch v. Avaya, Inc.*, 159 F. App'x 736, 737 (8th Cir. 2005) ("[The pro se plaintiff's] repeated references on appeal to her unverified complaint are unavailing, because only a verified complaint is the equivalent of an affidavit for purposes of summary judgment."). Given the plaintiff's nearly complete failure to come forward with any evidence or relevant legal authority, the court finds that the defendant is entitled to judgment as a matter of law with respect to the plaintiff's deliberate indifference claim. *Cf. Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (observing that conclusory allegations in verified complaint and statements in affidavit did not establish deliberate indifference to inmate's serious medical needs).

Moreover, the record establishes beyond genuine dispute that the defendant's actions did not rise to the level of a constitutional violation, that is, constitute cruel and unusual punishment that is cognizable under Section 1983. The plaintiff's allegations belie the existence of the requisite deliberate indifference to serious medical needs. The plaintiff fails to offer any evidence that demonstrates the defendant's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-41. The competent evidence of record establishes that the medical treatment provided by the defendant did not deviate from the applicable standard of care. *Cf. Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (stating that medical treatment may so deviate from applicable standard of care as to evidence deliberate indifference).

It is undisputed that plantar fasciitis is best treated with anti-inflammatories, arch support and stretching exercises and that the defendant provided typical care – that is, ordered ibuprofen for the plaintiff, repeatedly instructed the plaintiff to continue to purchase such analgesic as needed through the commissary, instructed the plaintiff to purchase new insoles for his shoes, gave the plaintiff stretching exercises and ordered appointments to be scheduled so that the plaintiff could receive steroid injections in his feet, when the plaintiff presented with foot pain. More specifically, the defendant ordered

ibuprofen for the plaintiff in February of 2014, instructed the plaintiff to purchase new insoles in February of 2014, instructed the plaintiff to purchase ibuprofen as needed in February of 2014, reordered ibuprofen for the plaintiff in April of 2014, made arrangements so that the plaintiff could get steroid injections in his feet in June of 2014, reordered ibuprofen for the plaintiff in October of 2014, made arrangements so that the plaintiff could get steroid injections in his left foot in November of 2014 and his right foot in January of 2015, reordered ibuprofen for the plaintiff in January of 2015, instructed the plaintiff to purchase ibuprofen as needed in January of 2015, reviewed with the plaintiff the recommendation by Dr. Kosinski that he buy New Balance shoes in January of 2015, reviewed with the plaintiff the course of treatment that Dr. Kosinski outlined in April of 2015, gave the plaintiff exercises in July of 2015, instructed the plaintiff to purchase ibuprofen as needed in July of 2015 and made arrangements so that the plaintiff could get steroid injections in his feet in December of 2015.

The record, which includes (1) Dr. Kosinski's statement in June of 2014 that the plaintiff could come back if the steroid injection worked, statement in January of 2015 that the plaintiff evidently had relief in his left foot after it had been injected with a steroid in November of 2014 and observation in January of 2015 that there was no indication for any further injections before six months to a year and that he should perform plantar flexion and extension exercises, (2) the defendant's reordering of ibuprofen in January of 2015 or shortly after the plaintiff received steroid injections in his right foot, (3) the defendant's observation in April of 2015 and July of 2015 that the plaintiff walked into the nurses' office with a normal gait and (4) the plaintiff's failure to follow the advice of the defendant and Dr. Kosinski, indicates that the course of treatment chosen by the defendant was sensible. *See Steele v. Weber*, 278 F. App'x 699, 700 (8th Cir. 2008) (holding that no Eighth Amendment violation occurred where prison doctors and officials continuously tried different methods and medications to treat plaintiff's intractable-pain disorder); *Hartsfield*,

491 F.3d at 398 (concluding that defendants responded appropriately to complaints of pain and discomfort, which included first trying ibuprofen, and that plaintiff unreasonably refused to act); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (finding that adherence to treating physician's treatment decision did not constitute deliberate indifference); *Logan*, 119 F.3d at 649-50 (concluding that prison doctors were not deliberately indifferent because they treated prisoner's pain on numerous occasions and offered sensible medication and treatment, which he refused); *Fletcher*, 994 F.2d at 549 (holding that conservative treatment over time did not establish deliberate indifference); *see also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (stating that there is insufficient evidence of serious medical need when the medical need claimed is based on bare assertion of inmate). Contrary to the plaintiff's bare assertion, there is no indication whatsoever that other avenues, such as providing muscle relaxers, needed to be pursued to treat the plaintiff's plantar fasciitis properly.

Although the defendant instructed the plaintiff to buy new insoles for his shoes in February of 2014, the plaintiff waited until July of 2014 to purchase new gel inserts. And, just prior to receiving another injection in his left foot in November of 2014, the plaintiff purchased new shoes and gel inserts. Although Dr. Kosinski instructed the plaintiff to buy New Balance shoes in January of 2015, the plaintiff waited until May of 2015 to do so. Despite informing the plaintiff in February of 2014, January of 2015 and July of 2015 that he could purchase ibuprofen as needed from the commissary, the plaintiff opted not to purchase any ibuprofen because he could not get the dosage that he desired. And, consistent with the observation that the defendant made in July of 2015 and October of 2015, the plaintiff did not purchase shoe inserts or ibuprofen. In fact, even though he purchased gel inserts in July of 2014 and November of 2014, the plaintiff never purchased additional gel inserts after November of 2014, and he admits that he never purchased analgesics from the commissary. Clearly, the plaintiff had the ability to purchase proper

footwear and did so, and he could have purchased other products, such as gel inserts, to make his feet more comfortable or analgesics to address his pain.

In addition, consistent with Dr. Kosinski's indications for treatment, the defendant provided the plaintiff exercises to address his plantar fasciitis and ensured that the plaintiff received steroid injections less than a year from the date that he last received an injection. Hence, it cannot be said that the defendant actually knew of and deliberately disregarded signs that his pain was serious and required immediate medical attention. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (holding that, to be deliberately indifferent, a defendant must have "failed to act despite . . . knowledge of a substantial risk of serious harm"); *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (stating that inmate must show that defendants were more than grossly negligent and that their mental state was akin to criminal recklessness, that is, they disregarded known risk to his health); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (emphasizing that deliberate indifference requires a highly culpable state of mind approaching actual intent).

Lastly, as the court previously observed, this case involves no more than a mere disagreement with the course of treatment that the defendant provided and well-established law dictates that such cases are not cognizable. *See, e.g.*, *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118—19 (8th Cir. 2007) (explaining that difference of medical opinion or course of treatment does not constitute deliberate indifference); *Dulany*, 132 F.3d at 1239 (holding that prison doctors remain free to exercise independent medical judgment and that inmates have no constitutional right to their requested course of treatment); *Long*, 86 F.3d at 765 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."); *Swope v. Cameron*, 73 F.3d 850, 852 (8th Cir. 1996) (holding that inmate's dissatisfaction with the psychological treatment he was receiving was insufficient to establish an Eighth Amendment violation); *Vaughan*

*v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995) (holding that disagreement as to the proper course of treatment of inmate's psychiatric condition was not actionable under the Eighth Amendment); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (holding that inmate's desire for a replacement joint instead of fusion surgery was "merely a disagreement with the course of medical treatment and does not state a constitutional claim"); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (finding that prisoner's disagreement with prison doctor about delaying surgery did not state a valid Eighth Amendment claim); *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs."); *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (holding that "an inmate's mere disagreement with the course of medical treatment he received does not give rise to a constitutional claim."); *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992) (holding that "a prisoner's mere difference of opinion over matters of expert medical judgment of a course of medical treatment fail to rise to the level of a constitutional violation"); *Taylor v. Turner*, 884 F.2d 1088, 1090 (8th Cir. 1989) (explaining that medical staff are entitled to exercise their professional judgment in making medical decisions); *Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (stating that mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (holding that prisoner's disagreement about treatment of pain in his lower back and arm did not constitute an Eighth Amendment violation); *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981) (finding that mere disagreement over diagnosis and medication involving back and joint pain did not constitute an Eighth Amendment violation); *Cognato v. Ciccone*, 558 F.2d 512, 513 (8th Cir. 1977) (concluding that prisoner's disagreement over medication did not raise a claim under the Eighth Amendment); *Seward v. Hutto*, 525 F.2d 1024, 1024-25 (8th Cir. 1975) (holding that prisoner's disagreement over diagnosis did not state an Eighth Amendment claim).

Because the defendant's medical judgment is not subject to second-guessing, the plaintiff fails to demonstrate a violation of the Eighth Amendment.

### 3.    *Qualified Immunity*

Having concluded that the defendant is entitled to judgment as a matter of law because the record fails to establish a genuine issue of material fact with regard to whether the defendant violated the plaintiff's constitutional right to be free from cruel and unusual punishment, it is not necessary to review the defendant's remaining contention that she is entitled to qualified immunity. Nonetheless, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," *Malley*, 475 U.S. at 341, and a reasonable medical professional in the position of the defendant would not have known that the course of medical treatment provided to the plaintiff would violate his clearly established constitutional rights, *see Mead v. Palmer*, 794 F.3d 932, 936-37 (8th Cir. 2015). The record clearly establishes that the defendant is entitled to qualified immunity with respect to the plaintiff's deliberate indifference claim, especially considering that the defendant exercised her medical judgment and attended to the plaintiff's medical needs. *See Cullor v. Baldwin*, 830 F.3d 830, 839 (8th Cir. 2016) (determining that defendant was entitled to qualified immunity because he was aware of the shortage of dentists and was attempting to alleviate, or at least mitigate, its consequences); *Saylor v. Nebraska*, 812 F.3d 637, 643-45 (8th Cir. 2016) (concluding that defendants were entitled to qualified immunity because they were aware of plaintiff's medical needs and took steps to meet those needs); *Reid v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015) (agreeing that claims against defendants in their individual capacities were barred by qualified immunity because numerous mental-health professionals evaluated plaintiff); *Triplett*, 592 F. App'x at 535 (concluding that facts failed to support a claim of deliberate indifference and defendants

were entitled to qualified immunity); *Fourte*, 746 F.3d at 389 (determining that doctor and nurse were entitled to qualified immunity).

## VI.  CONCLUSION

For the reasons set forth herein, the defendant's motion for summary judgment (Doc. No. 21) is **GRANTED**.  The Clerk shall enter judgment in favor of the defendant and close this case.

**IT IS SO ORDERED.**
**DATED** this 20th day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE